# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | |
|---|---|
| DFW AVIATION, LLC F/K/A RED AVIATION LLC,<br>*Plaintiff*<br><br>v.<br><br>MANSFIELD HELIFLIGHT, INC.<br>*Defendant* | §<br>§<br>§<br>§    Case No. 1:19-CV-481-LY<br>§<br>§<br>§<br>§ |

## AMENDED[1] REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
    **UNITED STATES DISTRICT JUDGE**

Before this Court are Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), filed on May 30, 2019 (Dkt. No. 6); Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, filed on June 27, 2019 (Dkt. No. 10); and Defendant's Response to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, filed on July 5, 2019 (Dkt. No. 11). On July 9, 2019, the District Court referred the above motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72 and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I.    BACKGROUND

On August 28, 2018, DFW Aviation, LLC f/k/a Red Aviation, LLC ("DFW"), a Delaware corporation with its principal place of business in Addison, Texas, and Mansfield Heliflight, Inc.

---

[1] The Court is filing an Amended Report and Recommendation to correct a typographical error contained in Section IV or its previous Report and Recommendation, filed on September 24, 2019, and to clarify the Court's recommendations. *See* Dkt. No. 14.

("Mansfield"), a Vermont corporation with its principal place of business in Milton, Vermont, entered into an Aircraft Engine Purchase Agreement (the "Agreement") in which Mansfield agreed to purchase two used Rolls Royce BR710-700 aircraft engines (MSN 12456 and MSN 12114) from DFW for the purchase price of $3.6 million. *See* Exh. A. to Dkt. No. 1. The Agreement further provided that DFW would loan Mansfield certain parts and equipment for the purposes of installing the engines for a period of 60 days "free of charge in [sic] an as-is basis, after which time the parts and equipment were to be returned to DFW at Mansfield's sole expense and risk." Dkt. No. 1 at ¶ 8. In the event the parts and equipment were not returned within 60 days, Mansfield agreed to pay DFW daily rent in an amount set forth in Schedule 1 of the Agreement. *Id.* at ¶ 9. If the parts and equipment were not returned within 120 days, Mansfield agreed to purchase the parts and equipment and pay DFW the "Outright Value" of the same as provided for in the Agreement. *Id.* at ¶ 10. The Agreement further provided that a failure by Mansfield to make any of the required payments or observe any other covenant or obligation of the Agreement would constitute default. *Id.* at ¶ 11.

DFW alleges that it provided all the necessary parts and equipment to Mansfield "per the parties' Agreement." *Id.* at ¶ 14. DFW alleges that Mansfield accepted the delivery of the parts and equipment, "and has utilized the same for its own use and benefit." *Id.* at ¶ 16. DFW alleges that although more than 120 days have passed since it delivered the parts and equipment to Mansfield, "Mansfield has failed to return the loaned parts and equipment, failed to make any payment of daily rent due under the Agreement and subsequent agreements between the parties, and failed to provide payment to DFW for the purchase of the parts and equipment as required by the Agreement and subsequent agreements between the parties." *Id.* at ¶ 19. DFW alleges that "Mansfield's non-payment of daily lease fees and purchase price payments, as well as its wrongful

and continuing possession of the equipment and parts, has rendered it in breach under the parties' Agreement and subsequent agreements between the parties." *Id.* at ¶ 20.

On May 3, 2019, DFW filed the instant lawsuit against Mansfield in the Western District of Texas, on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a), alleging breach of contract, unjust enrichment, conversion, replevin, promissory estoppel, and foreclosure of lien under § 70.300 of the Texas Property Code. DFW alleges that it has been damaged "in an amount in excess of $75,000 to be determined at trial." *Id.* at ¶ 25. DFW's Complaint alleges that "[j]urisdiction and venue are also proper pursuant to the parties' Aircraft Engine Purchase Agreement which underlies this dispute and provides that each party consents to the jurisdiction of any court in the state of Texas." *Id.* at ¶ 4.

On May 30, 2019, Mansfield filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing that this case should dismissed because "venue for this action is not proper in the Western District of Texas." Dkt. No. 6 at p. 1. Mansfield argues that it never agreed to venue in the Western District of Texas. Mansfield further argues that venue in the Western District is improper under the general venue statute, 28 U.S.C. § 1391(b). Alternatively, Mansfield moves to dismiss DFW's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

In response, DFW argues that Mansfield's Motion to Dismiss under Rule 12(b)(3) should be denied because "Mansfield affirmatively waived its right to challenge venue in the Western District of Texas by consenting to the jurisdiction of Texas courts as part of the Forum Selection Clause in the Agreement." Dkt. No. 10 at p. 8. DFW further argues that Mansfield's Motion to Dismiss under Rule 12(b)(6) should be denied because it has alleged plausible claims for relief.

## II. LEGAL STANDARD

A party may move to dismiss a claim for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). For all civil actions that invoke the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, venue is proper in:

> (1) a judicial district in which any defendant resides, if all the defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(B)-(3). If the case falls within one of these provisions, venue is proper; if it does not, venue is improper, "and the case must be dismissed or transferred under [28 U.S.C.] § 1406(a)." *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 56 (2013). Like personal jurisdiction, venue is "designed to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84 (1979).

Once a defendant challenges venue, the plaintiff has the burden to prove that the chosen venue is proper. *Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc.*, 982 F. Supp. 2d 714, 719 (W.D. Tex. 2013). The general rule is that venue must be established for each separate cause of action alleged in the complaint. *Asevedo v. NBCUniversal Media, LLC*, 921 F. Supp. 2d 573, 589 (E.D. La. 2013) (citing *McCaskey v. Cont'l Airlines, Inc.*, 133 F.Supp.2d 514, 523 (S.D. Tex. 2001) ("[I]t is well established that in a case involving multiple defendants and multiple claims, the plaintiff bears the burden of showing that venue is appropriate as to each claim and as to each defendant.").

On a Rule 12(b)(3) motion to dismiss for improper venue, the court must view all the facts in a light most favorable to the plaintiff. *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009). "Thus, a plaintiff may show that venue is proper by 'setting forth facts that taken as true would establish venue.'" *Zurich Am. Ins. Co.*, 982 F. Supp. 2d at 719; *see also Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). Unlike a Rule 12(b)(6) motion, the court may consider extrinsic evidence, including affidavits and other evidentiary materials, in determining whether venue is proper. *Ambraco*, 570 F.3d at 238. As noted, if the district court finds that venue is improper, the "district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

### III. ANALYSIS

**A. Did Mansfield waive its right to challenge venue in this case?**

DFW argues that Mansfield waived its right to challenge venue in the Western District of Texas by consenting to the jurisdiction of Texas courts as part of the forum selection clause contained in the parties' Agreement. Mansfield disagrees and contends that that the forum selection clause in this case is permissive and "does not provide a basis for *venue* in the Western District of Texas." Dkt. No. 6 at p. 2.

The Agreement contains the following forum selection clause:

> Governing Law and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of Texas excluding any conflict of laws provisions which would result in the application of the laws of any other jurisdiction. The Seller and Buyer do hereby waive any objections to the jurisdiction of such courts.

Ex. A to Dkt. No. 1 at ¶ 14 ("FSC"). DFW argues that the FSC constitutes a waiver of Mansfield's right to challenge venue in the Western District of Texas. DFW argues that by "consenting to the jurisdiction of Texas courts as part of the [FSC]," Mansfield has "waived its right to challenge venue in the Western District of Texas." Dkt. No. 10 at p. 8. DFW appears to be arguing that this

5

FSC is mandatory and, therefore, venue lies exclusively in the Western District of Texas. DFW is mistaken.

In order for a forum selection clause to prevent a party form exercising its right to contest venue, "the clause must give a 'clear and unequivocal' waiver of that right." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004). "A party may waive its rights by explicitly stating that it is doing so, by allowing the other party the right to choose venue, or by establishing an exclusive venue within the contract." *Id.* However, as the Fifth Circuit explained in *City of New Orleans*:

> A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another. For a forum selection clause to be exclusive, it must go beyond establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive. It is important to distinguish between jurisdiction and venue when interpreting such clauses. Although it is not necessary for such a clause to use the word "venue" or "forum," it must do more than establish that one forum will have jurisdiction.

*Id.* (internal citations omitted).

Thus, in *City of New Orleans*, the Fifth Circuit held that the forum selection clause at issue in the case, in which the defendant agreed "to the jurisdiction of the State Civil Courts of the Parish of Orleans" and waived "any pleas of jurisdiction on account of the residence elsewhere of the undersigned Contractor," was permissive and did not constitute a clear and unambiguous waiver of the defendant's right to remove the case to federal court. *Id.* at 505. The Fifth Circuit found that the clause "evinces consent to personal jurisdiction in the Louisiana state courts, but does not specify those courts as the exclusive venue for lawsuits arising from the contract, and does not waive MAS's right of removal." *Id.* at 504.

Similarly, in *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994), the Fifth Circuit held that a one-sentence forum selection clause, which provided that "[t]he laws and courts

of Zurich are applicable," was permissive rather than mandatory. The defendants argued that the clause mandated Zurich as the exclusive forum for the adjudication of disputes arising out of the contract. *Id.* In opposition, plaintiff argued that the clause was permissive only, so that the dispute could be litigated in other places where venue and jurisdiction are proper. *Id.* The Fifth Circuit ruled that the clause was permissive and that the parties did not intend that Zurich would be the exclusive forum, reasoning as follows:

> The only thing certain about the clause contained in the Corim–Caldas contract is that the parties consented to the personal jurisdiction of the Zurich courts. Beyond that, however, the language does not clearly indicate that the parties intended to declare Zurich to be the exclusive forum for the adjudication of disputes arising out of the contract. As we stated in *Keaty*, "this is not a situation where the contract, on its face, clearly limits actions thereunder to the courts of a specified locale."

*Id.* at 128 (quoting *Keaty v. Freeport Indonesia, Inc.*, 503 F.2d 955, 956-57 (5th Cir. 1974) (holding that forum selection clause was permissive and did not require exclusive jurisdiction in New York courts where it stated that "[t]his agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York").

In contrast to a permissive forum selection clause, in which a party consents to jurisdiction in one forum but does not waive the right to challenge venue, a mandatory forum selection clause "affirmatively requires that litigation arising from the contract be carried out in a given forum." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016). "An FSC is mandatory only if it contains clear language specifying that litigation *must* occur in the specified forum-and language merely indicating that the courts of a particular place 'shall have jurisdiction' (or similar) is insufficient to make an FSC mandatory." *Id.* (emphasis in original); *see also City of New Orleans*, 376 F.3d at 504 (noting that for a forum selection clause to be mandatory, it "must clearly demonstrate the parties' intent to make that jurisdiction exclusive").

7

Thus, in *Argyll Equities LLC v. Paolino*, 211 F. App'x 317, 318 (5th Cir. 2006), the Fifth Circuit held that a forum selection clause stating that the defendant "hereby consents to the exclusive jurisdiction of the courts sitting in Kendall County, Texas" and "irrevocably and unconditionally waives any defense of an inconvenient forum to the maintenance of any action or proceeding in any such court" was mandatory. The Circuit commented that "it is difficult to imagine how the clause in this case could more 'clearly demonstrate the parties' intent to make . . . jurisdiction exclusive,' than by providing for 'the exclusive jurisdiction of the courts sitting in Kendall County, Texas.'" *Id.* at 319. Accordingly, because the district court was not a court "sitting in Kendall County," the case was properly dismissed for improper venue. *See Matheson Tri-Gas, Inc. v. FlexTM, Inc.*, 2018 WL 2363958, at *1 (S.D. Tex. May 24, 2018) (holding that forum selection clause was mandatory and defendant therefore waived right to challenge venue in the case where the defendant agreed "to consent to the exclusive jurisdiction of the courts of the State of Texas with regard to any dispute arising hereunder"); *Link Am., LLC v. Infovista Corp.*, 2016 WL 3406114, at *2 (N.D. Tex. June 21, 2016) (holding the clause stating that that disputes "shall be subject to the exclusive jurisdiction of the Massachusetts state and federal courts" was a mandatory clause); *Saye v. First Specialty Ins. Co.*, 2014 WL 1386565, at *3 (N.D. Tex. Apr. 9, 2014) (finding that forum selection clause was mandatory and that venue lay exclusively in the state courts of New York where the clause stated that the parties "irrevocably submit to the exclusive jurisdiction of the Courts of the State of New York" and "expressly waive all rights to challenge or otherwise limit such jurisdiction").[2]

---

[2] DFW relies on both *Argyll* and *Matheson Tri-Gas* in support of its argument that Mansfield waived its right to challenge venue in this case. DFW's reliance is misplaced in that these cases involve mandatory forum selection clauses, unlike the instant case.

Based on the foregoing, the Court finds that the FSC in this case is permissive, and only demonstrates Mansfield's consent to the jurisdiction of courts in Texas. The FSC does not mandate that venue lie exclusively in Texas courts, or more specifically in the Western District of Texas.[3] Therefore, Mansfield did not clearly and unambiguously waive its right to challenge venue in the Western District of Texas by agreeing to the FSC in this case. Accordingly, the Court now addresses Mansfield's argument that venue in the Western District of Texas is not proper under 28 U.S.C. § 1391(b).

**B. Is venue proper in the Western District of Texas?**

The only venue category that DFW relies on this case is § 1391(b)(2), which allows a party to file a civil action in any judicial district in which "a substantial part of the events or omissions" that gave rise to its claims occurred. 28 U.S.C. § 1391(b)(2). "Although the chosen venue does not have to be the place where the most relevant events took place, the selected district's contacts still must be substantial." *McClintock v. Sch. Bd. E. Feliciana Parish*, 299 F. App'x 363, 365 (5th Cir. 2008). "That means for venue to be proper, *significant* events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other *material* events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). A substantial part of the events giving rise to the claim may have occurred in more than one district, making venue proper in each district. *Zurich Am. Ins.,* 982 F. Supp. 2d at 722. "In determining whether or not venue is proper under this provision, the Court looks to the defendant's conduct, and where that conduct took place, rather than focusing on the activities of the plaintiff." *Gault v. Yamunaji, L.L.C.*, 2009 WL 10699952, at *5 (W.D. Tex. Apr. 17, 2009) (J. Sparks) (citing *Goff v. Hackett*

---

[3] The Court notes that even if the FSC were mandatory and required all litigation to be brought exclusively in Texas courts (which it does not), it does not state that venue shall lie exclusively in the Western District of Texas.

9

*Stone Co.*, 185 F.3d 874, 1999 WL 397409, at *1 (10th Cir. 1999); *Woodke v. Dahm*, 70 F.3d 983, 985-86 (8th Cir. 1995); *Bigham v. Envirocare of Utah*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000)).

To determine where a substantial part of the events in a breach of contract case took place, courts have considered where the contract was executed, performed, and breached. *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *Am. Carpet Mills v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. 1981); *Wolf Network, LLC v. AML Diagnostics, Inc.*, 2016 WL 1357742, at *2 (N.D. Tex. Apr. 5, 2016). As noted, DFW's Complaint alleges that Mansfield breached the Agreement by failing to make rental and purchase price payments and by unlawfully retaining the leased parts and equipment. Dkt. No. 1 at ¶ 30. DFW also alleges that Mansfield has unlawfully retained the loaned equipment and parts and, therefore, has converted the equipment and parts. *Id.* at ¶ 38. None of these events took place in the Western District of Texas.

As noted, DFW resides in Addison, Texas, in the Northern District of Texas, and Mansfield resides in Milton, Vermont, in the District of Vermont. The Agreement in this case was not executed in the Western District of Texas.[4] *See* Dkt. No. 11 at p. 5 n.4. Mansfield never traveled to the Western District of Texas in connection with the negotiations or execution of the Agreement. *See* Dkt. No. 7 at p. 4. Mansfield wired the funds used to purchase the engines to an escrow agent located in Oklahoma City, Oklahoma. All of the events giving rise to DFW's breach of contract claim occurred in Milton, Vermont, not the Western District of Texas. DFW shipped the parts and equipment at issue to Vermont,[5] and DFW alleges that Mansfield utilized that equipment in Vermont, and refused to pay for and/or return those items to DFW. *See* Dkt. No. 1 at ¶¶ 17-19.

---

[4] The parties have failed to state in the pleadings where the Agreement was executed.

[5] *See* Dkt. No. 7 at Exhs. D, E, and F.

Thus, the parts and equipment at issue are located in Vermont, and DFW alleges that Mansfield has failed to make payments to DFW from its headquarters in Vermont. *See Wolf Network*, 2016 WL 1357742, at *3 (finding that the place of breach, i.e., where the defendant refused to pay the plaintiff was in Florida, where defendant was located); *Ranger Steel Servs., L.P. v. Orleans Materials & Equip. Co.*, 2010 WL 173543, at *2 (S.D. Tex. Jan. 14, 2010) (finding that the failure to make payments under the contract occurred in Louisiana where the defendant was located in Louisiana and was supposed to make payments to Texas).[6] Thus, the performance of the contract and the alleged breach occurred in Vermont, not Texas. *See Victory Renewables, LLC v. Energy Trading Co.*, 2019 WL 2539209, at *5 (N.D. Tex. Feb. 8, 2019) (finding that venue was proper in Long Beach, California where the defendant received, possessed and failed to pay the purchase orders under the contract), *report and recommendation adopted,* 2019 WL 2540738 (N.D. Tex. Mar. 6, 2019); *Wolf Network*, 2016 WL 1357742, at *3 (finding that venue was improper in Texas where performance of contract and breach occurred in Florida); *Woodward v. Algie*, 2013 WL 12139376, at *2 (N.D. Tex. Sept. 9, 2013) (finding that venue was improper in Texas where alleged performance and breach of the contract occurred in Indiana, not Texas).

DFW alleges for the first time in its Response that it began negotiating the Agreement in 2017 (14 months before the parties executed the Agreement) from its former corporate headquarters in Georgetown, Texas.[7] DFW also notes that before the Agreement was executed in August 2018, it stored the parts and equipment subject to the Agreement in Georgetown. The Court finds these

---

[6] While DFW could argue that the failure of Mansfield to send payment into Texas was the omission giving rise to its breach of contract claim, "mere mailing of payments is not sufficient to establish either personal jurisdiction or proper venue." *Sysinformation, Inc. v. Prof'l Healthcare Billing Servs.*, 2009 WL 4640272, at *4 (W.D. Tex. Nov. 30, 2009); *see also Ranger Steel Servs.*, 2010 WL 173543, at *2 (finding that "the mere obligation to make payments to a Texas resident is not sufficient to establish proper venue").

[7] DFW moved its corporate headquarters from Georgetown to Addison in May 2018. Dkt. No. 10 at p. 10.

events unrelated to the claims at issue in this case. DFW is alleging that Mansfield breached the Agreement and converted its property *after* it executed the Agreement. Because DFW is not alleging a fraudulent inducement claim, any negotiations between the parties before the Agreement was executed are irrelevant. *See Wolf Network*, 2016 WL 1357742, at *2 (holding that whether defendant made misrepresentations to plaintiff during negotiations before the contract was executed was irrelevant to claim that defendant failed to pay the amount due under the contract).

The analysis under § 1391(b)(2), moreover, "requires courts to focus on the *defendant's* conduct alone; the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district." *Gault*, 2009 WL 10699952, at *5. DFW's unilateral actions in this case "play no part in the venue analysis because '[o]nly the events that directly give rise to the claim are relevant.'" *Woodward*, 2013 WL 12139376, at *2 (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)). DFW's breach of contract and related claims pertain only to Mansfield's alleged failure to perform its obligations under the Agreement. Thus, the only relevant events and omissions that give rise to DFW's claims are Mansfield's failure to make payments under the Agreement and its alleged failure to return the property to DFW.

Although the Court need not address DFW's remaining claims under the § 1391(b)(2) analysis,[8] the other major claim DFW alleges in the Complaint, conversion, fares no better. "[T]he venue analysis for a conversion claim focuses on where the conversion occurred." *Wolf Network*, 2016 WL 1357742, at *2. Because DFW alleges that the conversion occurred in Vermont, venue

---

[8] *See Asevedo*, 921 F. Supp. 2d at 589 (noting that the general rule is that venue must be established for each separate cause of action alleged in the complaint).

12

in this case would be proper in Vermont, not Texas. *See id.* (finding that venue was proper in Florida, not Texas, where the conversion occurred in Florida).

Based on the foregoing, the Court finds that a substantial part of the events or omissions giving rise to the claims alleged by DFW in this lawsuit did not occur in the Western District of Texas. Accordingly, the Court finds that venue is improper in the Western District of Texas.[9]

**C. Should this case be transferred pursuant to 28 U.S.C. § 1406(a)?**

When a case is filed in the wrong venue, 28 U.S.C. § 1406(a) instructs district courts either to dismiss or, "if it be in the interest of justice," to transfer to a district where venue is proper. *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 244 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1699 (2018). "The district court has broad discretion in deciding whether to order a transfer." *Caldwell v. Palmetto State Sav. Bank of South Carolina*, 811 F.2d 916, 919 (5th Cir. 1987). "Congress, by the enactment of §1406(a), recognized that 'the interest of justice' may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as 'time-consuming and justice-defeating technicalities.'" *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (quoting *Internatio-Rotterdam, Inc., v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955)).

The Court finds that it would be in the interest of justice to recommend denying the Motion to Dismiss and transferring this case to the United States District Court for the District of Vermont instead. The Court finds that venue would be best suited in this case in the District Court of Vermont under 28 U.S.C. § 1391(b) because Mansfield resides there, a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred there, and the property at issue is located in that District. While DFW requests that the case be transferred to the Northern

---

[9] Because venue is improper in this case, the Court need not address Defendant's alternative Rule 12(b)(6) arguments for dismissal.

District of Texas, DFW's residence in the Northern District of Texas is the only connection this case has to that District. "[A] plaintiff's residence is an irrelevant consideration in determining proper venue." *Moran v. Smith*, 2016 WL 4033268, at *2 (W.D. Tex. July 27, 2016) (citing 28 U.S.C. § 1391(b)). Accordingly, the Court finds that the District of Vermont would be a more proper venue in this case.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(3) (Dkt. No. 6). The undersigned also **RECOMMENDS** that the District Court **TRANSFER** this case to the United States District Court for the District of Vermont pursuant to 28 U.S.C. § 1406(a) in the interest of justice. Because the undersigned is recommending transferring the case, the Court **FURTHER RECOMMENDS** that the District Court will leave Defendant's alternative Motion to Dismiss under Rule 12(b)(6) for the transferee court to decide.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C.

§ 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 9, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE